IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. _____

MARISELA MATA and BIBIANA
HERNANDEZ, as individuals and
on behalf of all others similarly situated,

v.

GRUPO HOTELERO GRAN CARIBE,
CORPORACIÓN DE COMERCIO Y
TURISMO INTERNACIONAL
CUBANACÁN S.A., GRUPO DE
TURISMO GAVIOTA S.A.,
CORPORACIÓN CIMEX S.A., RAÚL
DOE 1-5, and MARIELA DOE 1-5,

    Defendants.
_____/

**CLASS ACTION COMPLAINT FOR DAMAGES**

Antonio Mata y Alvarez built the Hotel San Carlos in the historic center of Cienfuegos, Cuba in 1925. He and his son ran it and built up its good will and fame until Fidel Castro seized power and established a communist government in Cuba, which confiscated the San Carlos from the Mata family. The communist Cuban government—and more recently, the Meliá hotel chain[1]—has re-used and benefitted from the San Carlos for decades without paying the Mata family any compensation whatever. The Matas now sue to right the defendants' unlawful trafficking in their property and for just compensation for themselves and persons who are in a similar situation.

## THE ACTION

1. Marisela Mata and Bibiana Hernandez (the "Mata Heirs"), on behalf of themselves and a class of similarly situated persons, sue defendants Grupo Hotelero Gran Caribe ("Gran Caribe"), Corporación de Comercio y Turismo Internacional Cubanacán S.A. ("Cubanacán"), Grupo de Turismo Gaviota S.A. ("Gaviota"), Corporación Cimex S.A. ("Cimex"), Raúl Does 1-5, and Mariela Does 1-5 under the Cuban Liberty and Democratic Solidarity Act, 22 U.S.C. § 6021, *et seq.* (the "LIBERTAD Act"), for unlawful trafficking in their confiscated property in Cuba.

## THE PARTIES

2. Marisela Mata is a United States citizen and a natural person who resides in Miami, Florida.

---

[1] In accordance with 22 U.S.C. § 6082(a)(3), the Mata Heirs have, contemporaneously with this filing, given notice to Meliá Hotels International, S.A., Meliá Hotels International Cuba, and Meliá Hotels USA, LLC (together, the "Meliá Accomplices") of their intent to add the Meliá Accomplices as defendants to this lawsuit if they do not promptly compensate the Mata Heirs and the class for the unlawful trafficking of their property.

2

3. Bibiana Hernandez is a United States citizen and a natural person who resides in Miami, Florida.

4. Defendant Gran Caribe is a "Sociedad Anónima" incorporated in Cuba, with its principal place of business at 7ma. Avenida No. 4210 entre 42 y 44, Miramar, Playa, La Habana, Cuba. Gran Caribe is an agency or instrumentality of the government of Cuba.

5. Defendant Cubanacán is a "Sociedad Anónima" incorporated in Cuba, with its principal place of business at Calle 23 No. 156 entre N y O, Vedado, Plaza de la Revolución, La Habana, Cuba. Cubanacán is an agency or instrumentality of the government of Cuba.

6. Defendant Gaviota is a "Sociedad Anónima" incorporated in Cuba, with its principal place of business at Edificio La Marina, 3er. Piso. Ave del Puerto No. 102 entre Justiz y Obrapía, La Habana, Cuba. Gaviota is an agency or instrumentality of the government of Cuba.

7. Defendant Cimex is a "Sociedad Anónima" incorporated in Cuba, with its principal place of business at Edificio Sierra Maestra, Calle 1 entre 0 y 2, La Puntilla, Miramar, Havana, Cuba. On information and belief, Cimex is a holding company owned by the government of Cuba, operating in various industries, including hospitality and tourism. Cimex is an agency or instrumentality of the government of Cuba.

8. Raúl Does 1-5 and Mariela Does 1-5 are as-yet-unknown members of the Cuban government who, on information and belief, are associated with, and benefit from, the trafficking of confiscated property belonging to the Mata Heirs and to the class members.

**JURISDICTION AND VENUE**

9. This Court has subject matter jurisdiction of this action under 28 U.S.C. § 1331 because this action arises under the LIBERTAD Act (22 U.S.C. § 6082) and the amount in controversy exceeds $50,000, excluding interest, costs, and attorneys' fees.

10. This Court has personal jurisdiction over defendants Gran Caribe, Cubanacán, Gaviota, and Cimex under 28 U.S.C. § 1330 once service is made under 28 U.S.C. § 1608 because Gran Caribe, Cubanacán, Gaviota, and Cimex are a foreign state as defined by 28 U.S.C. § 1603.

11. The Court has personal jurisdiction over Raúl Does 1-5 and Mariela Does 1-5 under Fed. R. Civ. P. 4(k).

12. Venue is proper in this District under 28 U.S.C. § 1391(c)(3) because defendants are not United States residents.

## THE LIBERTAD ACT

13. In 1996, in response to the communist Cuban government's murder of four civilian pilots performing humanitarian work with the Cuban-American group Brothers to the Rescue, Congress enacted the LIBERTAD Act to strengthen sanctions against the communist Cuban government and deter the exploitation of wrongfully confiscated property in Cuba belonging to U.S. nationals.

14. Title III of the LIBERTAD Act provides U.S. nationals whose property in Cuba had been confiscated by the communist Cuban government with a right of action against those who traffic in that property. 22 U.S.C. §§ 6081-6085.

15. Since the LIBERTAD Act's enactment more than twenty years ago, successive Presidents of the United States suspended the right of action provided by Title III. As of May 2, 2019, the suspension was not renewed. The Mata Heirs and the class members are now permitted to file suit under the LIBERTAD Act.

## FACTUAL ALLEGATIONS

***A.  The San Carlos***

16. In June 1925, Antonio Mata y Alvarez built and established the Hotel San Carlos (the "San Carlos") located at Calle de San Carlos, No. 143, Cienfuegos, Cuba. He operated the San Carlos for nearly 32 years, building its reputation so that it was regarded as the leading hotel in the historic center of Cienfuegos.

17. On January 4, 1959, Antonio Mata y Alvarez died intestate in Cuba. Ownership of the San Carlos passed to his only heir, his son, Antonio Alberto Lazaro Mata.

18. On December 4, 1962, the communist Cuban government confiscated the San Carlos from Antonio Alberto Lazaro Mata.

19. Around 1984, the communist Cuban government abandoned and closed the San Carlos, which fell into disrepair.

20. In 2005, defendant Cimex began renovating the San Carlos. That work continued for more than a decade. The San Carlos was re-opened on January 14, 2018, as the Meliá San Carlos.

***B.  Succession Rights to the San Carlos***

21. Antonio Alberto Lazaro Mata died on August 25, 1979, in Cienfuegos, Cuba, and was survived by his wife and two children, Antonio Barbaro Mata and Marisela Mata. On his death, ownership of the San Carlos passed by operation of Cuban law to Antonio Barbaro Mata and Marisela Mata, in equal parts.

22. Antonio Barbaro Mata and Ms. Hernandez were married in Miami in 1985.

23. Antonio Barbaro Mata passed away intestate on August 16, 2000, at which point his half ownership of the San Carlos passed by operation of Florida law to Ms. Hernandez.

24. As of the time of filing this lawsuit, the Mata Heirs—Ms. Mata and Ms. Hernandez—are the rightful owners of the San Carlos, which is being trafficked by Gran Caribe and the Meliá Accomplices under the name Meliá San Carlos.

### C. *Defendants Have Trafficked the Hotel Without Compensating the Mata Heirs*

25. Neither the communist Cuban government, nor any of the defendants and their accessories, the Meliá Accomplices, has ever paid—and the Mata Heirs have never received—any compensation whatsoever for the trafficking of the San Carlos.

26. The Mata Heirs were not eligible to file a claim with the Foreign Claims Settlement Commission under Title V of the International Claims Settlement Act of 1949 (22 U.S.C. § 1643 *et seq.*) because they were not U.S. citizens at the time the property was confiscated.

27. The San Carlos has not been the subject of a certified claim under Title V of the International Claims Settlement Act of 1949 (22 U.S.C. § 1643 *et seq.*).

### D. *The Joint Venture*

28. Defendant Gran Caribe and the Meliá Accomplices operate in a joint venture by which they receive, possess, obtain control of, manage, use, or otherwise acquire or hold an interest in confiscated property and engage in commercial activity involving the use of or otherwise benefitting from confiscated property. One of these properties is the iconic San Carlos.

29. Apart from the real property itself, the defendants and their Meliá Accomplices also trafficked in the San Carlos' name, its good will, and the legacy built up by the Mata family.

30. Defendants and the Meliá Accomplices market not just the San Carlos' physical structure, but also its legacy and goodwill, and its storied history—all the result of the Mata family's efforts over decades—to attract guests. The Meliá Accomplices' websites state that the

San Carlos was "[o]pened in 1925" and served as "the city's main hotel throughout the first half of the 20th century."[2]

## CLASS REPRESENTATION ALLEGATIONS

31. Under Fed. R. Civ. P. 23, the Mata Heirs bring this suit and seek class certification of the claim alleged here and a damages judgment against defendants for themselves and on behalf of the class.

32. The class is defined as follows and consists of:

> All U.S. nationals (as defined at 22 U.S.C. § 6023(15)) who own property (as defined at 22 U.S.C. § 6023(12)) in Cuba that was expropriated by the government of Cuba prior to March 12, 1996, and has been trafficked by an agency or instrumentality of Cuba together with the Meliá Accomplices without prior authorization of, or absent compensation to, such U.S. nationals, where such U.S. national was not eligible to file a claim with the Foreign Claims Settlement Commission under Title V of the International Claims Settlement Act of 1949 (22 U.S.C. § 1643 et seq.), and no certified claim to the property exists.
>
> This class definition excludes (a) the defendants, their officers, directors, management, employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action and any members of their immediate families.

### A.   *Federal Rule of Civil Procedure 23(a)*

33. Fed. R. Civ. P. 23(a) provides for class certification where the representative plaintiffs demonstrate that:

   1. the class is so numerous that joinder of all members is impracticable;
   2. there are questions of law or fact common to the class;
   3. their representative claims or defenses are typical of the claims or defenses of the class; and
   4. they will fairly and adequately protect the interests of the class.

---

[2] *See* http://www.meliacuba.com/cuba-hotels/hotel-melia-sancarlos.

  *(1)* *Numerosity*

34. On information and belief, the class consists of hundreds of persons. The Meliá Accomplices operate at least 34 hotels, resorts, and other tourist attractions in at least ten locations in Cuba. Many of those properties have numerous original owners and multiple heirs, rendering individual joinder of each class member impracticable.

  *(2)* *Commonality*

35. The Mata Heirs and the class have claims that raise common questions of law or fact.

36. This is an action in which the Mata Heirs and the class members assert claims alleging the same theory of recovery, that is, that they are entitled to damages from the defendants for the defendants' wrongful trafficking of their property.

37. The Mata Heirs' and class members' claims arise from the same practice or course of conduct: defendants' contractual agreements with the Meliá Accomplices that govern the trafficking of confiscated properties used in the hospitality and tourism industry for their own economic gain.

38. The Mata Heirs' and the class members' damages were caused by the same practice or course of conduct: defendants' unlawful trafficking with the Meliá Accomplices in their property without prior authorization or compensation to the rightful owners.

39. The Mata Heirs and the class members raise common questions of law or fact, including, but not limited to, whether:

  a. The communist Cuban government nationalized, expropriated, or seized property without providing the owner with adequate or effective compensation;

  b. The confiscation of property occurred before March 12, 1996;

  c. Defendants trafficked in that confiscated property; and

        d.     Defendants knew or had reason to know that the property they used was confiscated.

*(3)    Typicality*

40.    The Mata Heirs' claims are typical of the claims of the class because they are based on the same legal theory, arise from a similar core set of facts, and are not subject to any unique defenses. Members of the class have sustained, and will continue to sustain, damages in the same manner as the Mata Heirs as a result of defendants' conduct.

*(4)    Adequacy of Representation*

41.    The Mata Heirs and their attorneys will fairly and adequately protect and represent the interest of the class members.

42.    The Mata Heirs are members of the class defined above. As the representative plaintiffs, they are committed to the active and vigorous prosecution of this action and have engaged competent counsel experienced in litigation of this nature and with the resources and commitment to vigorously prosecuting this case to a successful resolution.

43.    There is no hostility of interests between the Mata Heirs and the other class members. The Mata Heirs have no claims that are antagonistic to the claims of the class members and anticipate no difficulty in the management of this litigation as a class action.

**B.**    ***Federal Rule of Civil Procedure 23(b)***

44.    This class action also is maintainable under Rule 23(b)(3).

*(1)    Predominance*

45.    In this case, common liability issues of law and fact predominate over any hypothetical or potential individualized issues because the Mata Heirs' and the class members' claims arise from a common nucleus of operative fact and share, among other things, the

common issues of law and fact set forth above. The predominant common issue in this action is whether defendants knew, or had reason to know, that they trafficked in confiscated property.

### (2) *Superiority*

46. A class action is superior to other available methods for the fair and efficient adjudication of this litigation because it is the most manageable and efficient way to resolve the individual claims of each class member.

47. Specifically, a class action will provide class members with what may be their only economically viable remedy. Moreover, there are no known class members who are interested in individually controlling the prosecution of separate actions. In addition, a class action will concentrate all litigation in one forum, which will conserve judicial and party resources with no unusual manageability problems.

## CAUSE OF ACTION

### COUNT I
### Private Right of Action Under 22 U.S.C. § 6082(a)(1)
### Against All Defendants

48. The Mata Heirs incorporate by reference paragraphs 1 to 47 as if fully set forth here.

49. This claim is brought under Title III of the LIBERTAD Act, 22 U.S.C. § 6082.

50. Defendants are "persons" as defined by 22 U.S.C. § 6023(11).

51. The Mata Heirs and the class members had their property confiscated by the communist Cuban government.

52. Defendants Gran Caribe, Cubanacán, and Gaviota, and their Meliá Accomplices, entered into joint ventures for the purpose of trafficking in confiscated properties for use as hotel

or other hospitality venues, including the San Carlos, which trafficking continues to this day, in violation of Title III of the LIBERTAD ACT.

53. Defendant Cimex trafficked in properties, including the San Carlos, by renovating and investing in the hotel for its benefit.

54. On information and belief, officials of the Cuban government and its defendant instrumentalities, including Raúl Does 1-5 and Mariela Does 1-5 have, throughout the years, also participated in and profited from trafficking in confiscated properties, including the San Carlos.

55. Defendants Gran Caribe, Cubanacán, Gaviota, Cimex, Raúl Does 1-5, and Mariela Does 1-5, together with the Meliá Accomplices, have conducted this trafficking "without the authorization of any United States national who holds a claim to the property" (22 U.S.C. § 6023(13)) in violation of Title III of the LIBERTAD Act.

56. Accordingly, the Mata Heirs and the class members are entitled to damages to be determined under 22 U.S.C. § 6082(a)(1)(A)(i), along with attorneys' fees and costs under 22 U.S.C. § 6082(a)(1)(A)(ii).

## PRAYER FOR RELIEF

WHEREFORE, the Mata Heirs, individually and on behalf of the class members, demand the following relief:

a) A finding that this action satisfies the prerequisites for maintenance of a class action under Federal Rule of Civil Procedure 23(a) and (b)(3), and certificate of class;

b) Designation of the Mata Heirs as representatives for the class and their undersigned counsel as class counsel for the class; and

c) A judgment against defendants that:

  i. Awards actual damages in an amount to be determined under 22 U.S.C. § 6082(a)(1)(A)(i);

    ii.    Awards reasonable attorneys' fees and costs incurred in this action under 22 U.S.C. § 6082(a)(1)(A)(ii);

    iii.    Awards appropriate post-judgment interest; and

    iv.    Grants all other relief that the Court deems just and proper.

Dated: May 20, 2019

Respectfully submitted,

**RIVERO MESTRE LLP**
2525 Ponce de Leon Blvd., Suite 1000
Coral Gables, Florida 33134
Telephone: (305) 445-2500
Facsimile: (305) 445-2505
E-mail: arivero@riveromestre.com
E-mail: jmestre@riveromestre.com
E-mail: crodriguez@riveromestre.com

By: _/s/ Andrés Rivero_
ANDRÉS RIVERO
Florida Bar No. 613819
JORGE A. MESTRE
Florida Bar No. 88145
CARLOS A. RODRIGUEZ
Florida Bar No. 0091616

**MANUEL VAZQUEZ, P.A.**
2332 Galiano St., Second Floor
Coral Gables, Florida 33134
Telephone: (305) 445-2344
Facsimile: (305) 445-4404
E-mail: mvaz@mvazlaw.com

By: _/s/ Andrés Rivero_ FOR
MANUEL VAZQUEZ
Florida Bar No. 132826